**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>v.<br><br>Ana Flores-Ferris,<br><br>             Defendant. | No. CR-18-01356-TUC-RCC (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Defendant Ana Flores-Ferris's Motion to Suppress Based on Lack of Reasonable Suspicion to Conduct Investigatory Stop of Her Vehicle (Doc. 41). The Government has filed its response, and there was no reply. Govt.'s Response to Def.'s Mot. to Suppress (No Reasonable Suspicion to Stop) (Doc. 43). Defendant is charged with one (1) count of conspiracy to transport illegal aliens for profit, and two (2) counts of transportation of illegal aliens for profit in violation of Title 8, United States Code, Section 1324. Indictment (Doc. 28) at 1–2. Defendant Ana Flores-Ferris seeks suppression of all evidence obtained as a result of an allegedly faulty investigatory stop. *See* Def.'s Mot. to Suppress (Doc. 41).

Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for an evidentiary hearing and a report and recommendation. On October 18, 2018, an evidentiary hearing was held before Magistrate Judge Macdonald regarding the motion. Minute Entry 10/18/2018 (Doc. 49). This matter is ripe for adjudication. The Magistrate Judge recommends that the District Court, after its independent review, grant

Defendant's motion.

I. **FACTUAL BACKGROUND**

On June 13, 2018, United States Border Patrol Agent Julian Trujillo was assigned to the Border Apprehension and Interdiction Team ("BAIT") in the town of Arivaca, Arizona. Hr'g Tr. 10/18/2018 (Doc. 54) at 5:9–6:11. Agent Trujillo has been employed with Border Patrol for eleven and a half (11 1/2) years. *Id.* at 5:9–17, 19:9–11, 21:13–21. Agent Trujillo described his work on BAIT as a plain clothes detail, where agents are in plain clothes, driving unmarked vehicles, and watching traffic or areas that are known for smuggling activities. *Id.* at 5:19–24. Prior to working for BAIT, Agent Trujillo participated in ASID in the Tucson station area of responsibility, a detail where agents interview groups of undocumented aliens for the purpose of identifying the foot guide. *Id.* at 21:13–22:13.

### A. *The Arivaca Area and Initial Observation*

At approximately 10:40 a.m. on June 13, 2018, Agent Trujillo at the library parking lot in the town of Arivaca, watching traffic. Hr'g Tr. 10/18/2018 (Doc. 54) at 7:24–8:4, 20:16–19. Agent Trujillo described Arivaca, Arizona as approximately twenty (20) miles south of the Amado and I-19 intersection, and about twelve (12) miles north of the international border between the United States and Mexico. *Id.* at 6:3–7. Agent Trujillo further described the town of Arivaca as part of a smuggling corridor between Mexico to Tucson and Phoenix. *Id.* at 6:22–7:14, 22:25–23:11. Agent Trujillo testified that while observing traffic, he saw a white Toyota pickup truck pull into the library parking lot and park for approximately three (3) minutes, with the female driver, later identified as Defendant Ana Flores-Ferris, talking on her cellular telephone. *Id.* at 8:5–13, 18:7–15. Agent Trujillo further testified that he observed the pickup truck pull out, and head back into town. *Id.* at 8:5–13. Approximately three (3) minutes later, the same pickup truck returned and parked in the same parking spot, with the driver still talking on her cellular telephone. Hr'g Tr. 10/18/2018 (Doc. 54) at 8:5–24. Agent Trujillo

- 2 -

indicated that he found the driver's behavior strange, because the driver of the Toyota pickup never got out of the vehicle. *Id.* at 8:25–9:3.

Agent Trujillo described the library parking lot as consisting of approximately twenty (20) parking spaces. *Id.* at 9:4–6. Agent Trujillo further testified that there were other vehicles in the parking lot, but none in the area where the driver of the Toyota pickup parked, nor were there any coming or going from the parking lot. *Id.* at 9:4–15. Agent Trujillo testified that when the white Toyota pickup truck returned to the parking lot, a small gray sedan pulled up next to the pickup truck. *Id.* at 9:16–10:2. Agent Trujillo also testified that two females got out of the gray sedan and walked toward the pickup truck, while the female driver of the pickup truck motioned in a waving fashion indicating that they should hurry. Hr'g Tr. 10/18/2018 (Doc. 54) at 9:16–10:2. Agent Trujillo described the two women as wearing jeans, one with a navy blouse and matching purse, and the other with a red blouse and matching purse. *Id.* at 21:2–12.

Agent Trujillo testified that once the two women got into the pickup truck, it pulled out of the parking lot and headed east away from the town of Arivaca. *Id.* at 9:16–10:8, 23:12–19. Agent Trujillo further testified that he obtained the license plate information for both vehicles and followed the white pickup truck east while the gray sedan traveled west. *Id.* at 10:9–12, 23:12–19. Agent Trujillo reported following the white Toyota pickup truck for a few minutes until it stopped on Universal, just north of Lazy Acres. *Id.* at 10:13–20, 24:10–18. Agent Trujillo also reported that he was a few vehicles behind the white pickup truck. Hr'g Tr. 10/18/2018 (Doc. 54) at 10:21–23, 24:19–25. Agent Trujillo described the speed limit as approximately twenty-five (25) miles per hour at the library, then increasing to approximately forty-five (45) miles per hour. *Id.* at 23:22–24:5, 25:5–13.

Defendant Ana Flores-Ferris testified that she lives in Arivaca, Arizona. *Id.* at 38:20–23. Ms. Flores-Ferris testified that she noticed Agent Trujillo's SUV following her approximately a quarter-mile or less after she pulled out of the library parking lot. *Id.* at 39:12–40:2, 44:18–45:4. Ms. Flores-Ferris further testified that she was unaware that

the SUV was law enforcement, and noted that it looked like two or three other vehicles in Arivaca. *Id.* at 40:6–14, 45:5–9. Ms. Flores-Ferris testified that while driving on Arivaca Road, Agent Trujillo was following her closely enough that she thought he wanted to pass her. Hr'g Tr. 10/18/2018 (Doc. 54) at 40:15–41:18. Ms. Flores-Ferris further testified that she thought that if he did want to pass her when she turned onto Universal, she would let him go by. *Id.* at 40:15–42:4, 45:10–14. Ms. Flores-Ferris noted that this is normally what Arivaca residents do. *Id.* Because Ms. Flores-Ferris was going to turn onto Universal, she knew that she would be out of the SUV's way if it were to continue on Arivaca Road. *Id.* at 40:15–41:24.

### B. *The Stop*

Agent Trujillo testified that the white pickup truck pulled over to the side of the road, on top of the grass and noted that they had just passed an area where they could park. Hr'g Tr. 10/18/2018 (Doc. 54) at 13:3–13. Agent Trujillo further explained that the vehicle turned right onto Universal Ranch Road prior to stopping. *Id.* at 25:18–19. Ms. Flores-Ferris testified that once she turned onto Universal, Agent Trujillo was still behind her, so she pulled over to allow him to pass. *Id.* at 41:25–42:4, 45:10–23. Agent Trujillo identified photographs of the unmarked Tahoe, with an Arizona license plate, that he drove that day and testified that he did not activate his lights or siren, nor did he make any gestures indicating that the Toyota should pull over. *Id.* at 11:4–13:23, 17:19–25, 18:19–25. Agent Trujillo further testified that when the pickup truck pulled to the side of the road, he pulled in behind it and activated his vehicle's lights. *Id.* at 13:24–14:22, 17:19–25, 29:4–17, 30:1–6. Agent Trujillo explained that he activated the lights as a safety precaution, in light of the area where the vehicles were pulled off and stated that he ran the pickup truck's license plate and put on his vest. *Id.* at 13:24–14:22, 18:1–2, 31:4–16. Ms. Flores-Ferris presumed that Agent Trujillo was stopping her, because he pulled in right behind her and activated his lights. *Id.* at 42:5–21.

Agent Trujillo testified that he approached on the passenger side of the vehicle, and he inquired how its occupants were doing. Hr'g Tr. 10/18/2018 (Doc. 54) at 14:23–

15:4. Agent Trujillo further testified that the driver responded, "Good until now, sir." *Id.* at 14:23–15:4. Agent Trujillo introduced himself as Border Patrol and stated that he was going to conduct an immigration inspection. *Id.* at 15:5–18. Agent Trujillo testified that upon questioning, the driver stated that she was a United States citizen; however, the passengers did not answer. *Id.* Agent Trujillo stated that the back-seat passenger was laying down. *Id.* at 15:11–16:7. Agent Trujillo reported that there was open space, without obstruction, in front of the pickup truck. Hr'g Tr. 10/18/2018 (Doc. 54) at 16:8–13. Agent Trujillo asked about citizenship a second time, but in Spanish. *Id.* at 16:14–24. The passengers informed Agent Trujillo that they were from Guatemala. *Id.*

Agent Trujillo testified that he contacted his partners to alert them that he had a load vehicle, as well as informed dispatch. *Id.* at 16:25–17:5. Agent Trujillo instructed the driver to turn off the vehicle and give him the keys. *Id.* at 17:6–10, 31:17–32:7, 35:15–18. Agent Trujillo waited until his partner arrived before placing the driver of the vehicle under arrest. Hr'g Tr. 10/18/2018 (Doc. 54) at 17:11–15, 35:19–22.

## II. ANALYSIS

Defendant seeks suppression in this case, because "Ms. Flores-Ferris's vehicle was stopped unlawfully, as there was no justification for doing so." Def.'s Mot. to Suppress (Doc. 41) at 4. Defendant further asserts that "[w]hen viewed in totality, the town being considered an alien and drug smuggling corridor, and two people getting out of one car and getting into another car, they fail to establish reasonable suspicion that the truck was involved in illegal activity." *Id.* at 7.

### A. Search and Seizure—In General

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66

L.Ed.2d 621 (1981)). For the police to conduct a valid stop, they must "have a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (internal quotes and citation omitted). "[T]he level of suspicion required for a *Terry* stop[, however,] is obviously less demanding than that for probable cause." *Id.* at 8, 109 S.Ct. at 1585 (internal citations omitted). "Officers on roving border patrols . . . may conduct 'brief investigatory stops' without violating the Fourth Amendment 'if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (citations omitted).

### *B. Reasonable Suspicion*

"Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc)). "The reasonable-suspicion standard is not a particularly high threshold to reach." *Valdes-Vega*, 738 F.3d at 1078. Furthermore, although "a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744) (citations and internal quotation marks omitted).

When making a reasonable-suspicion determination, the reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (citations omitted); *see also United States. v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990). In so doing, officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* at 273, 122 S.Ct. at 750-51. (citations omitted); *see also Valdes-Vega*, 738 F.3d at 1078. Moreover, what may seem to be innocuous conduct when viewed in isolation may be

appropriately considered when considering the totality of the circumstances; thus, it is inappropriate to view factors in isolation and to give no weight to factors which may have an innocent explanation. *Arvizu*, 534 U.S. at 273-75, 122 S.Ct. at 750-51; *see also Cotterman*, 709 F.3d at 970 ("It is not our province to nitpick the factors in isolation but instead to view them in the totality of the circumstances."). Furthermore, "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Valdes-Vega*, 738 F.3d at 1078-79 (citing *Arvizu*, 534 U.S. at 277) (alterations in original).

"In the context of border patrol stops, the totality of the circumstances may include characteristics of the area, proximity to the border, usual patterns of traffic and time of day, previous alien or drug smuggling in the area, behavior of the driver, appearance or behavior of passengers, and the model and appearance of the vehicle." *Valdes-Vega*, 738 F.3d at 1079 (citing *United States v. Bignoni-Ponce*, 422 U.S. 873, 884-85, 95 S.Ct. 2574, 45 L.Ed.2d 607(1975)). "Not all of these factors must be present or highly probative in every case to justify reasonable suspicion[,] . . . [a]nd the facts must be filtered through the lens of the agents' training and experience." *Valdes-Vega*, 738 F.3d at 1079 (citations omitted).

Here, the Government asserts that because Agent Trujillo did not activate his lights or sirens, and Defendant pulled over to the side of the road and waited for him to approach voluntarily, this was a consensual encounter. *See Florida v. Bostick*, 501 U.S. 429 (1991) (a voluntary encounter between the police and a member of the public does not trigger Fourth Amendment protections). The Government further asserts that even if there was a stop, it was not an unlawful seizure. Agent Trujillo had reasonable suspicion to believe Defendant was involved in criminal activity, and a brief investigatory stop was appropriate.

Agent Trujillo is an eleven and a half (11 1/2) year veteran of Border Patrol. Hr'g Tr. 10/18/2018 (Doc. 54) at 5:9–17, 19:9–11, 21:13–21. Agent Trujillo testified that the activity he found suspicious was that Ms. Flores-Ferris was on the phone; left the library

parking lot and came back; that the two females who exited the gray sedan were hurried and did not know how to get in the white pickup truck; and that Arivaca, Arizona is a smuggling corridor. *Id.* at 6:22–7:14, 22:25–23:11, 32:21–34:12. Ms. Flores-Ferris, as a resident of the area, reasonably explained her driving behavior, especially why she pulled over once she turned onto Universal Road. *Id.* at 40:15–42:21, 45:10–23.

The Court finds Agent Trujillo's testimony credible; however, based upon the totality of the circumstances, there was not reasonable suspicion for him to stop Ms. Flores-Ferris. Someone entering the library parking lot while on the telephone, leaving briefly and returning in order to pick-up two passengers, is not sufficiently unusual to warrant a stop. Furthermore, as Ms. Flores-Ferris explained, pulling over to allow someone to pass on a two-lane highway is not suspicious behavior. The Court also finds that Ms. Flores-Ferris did not believe that she was free to leave, and therefore Agent Trujillo did effectuate a stop. As such, the specific articulable facts are insufficient to support reasonable suspicion justifying the stop.

### III. CONCLUSION

The Court finds that based upon the totality of the circumstances, Agent Trujillo did not have reasonable suspicion to stop Ms. Flores-Ferris's vehicle. As such, any evidence obtained as a result of that stop should be suppressed.

### IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Judge GRANT Defendant Ana Flores-Ferris's Motion to Suppress Based on Lack of Reasonable Suspicion to Conduct Investigatory Stop of Her Vehicle (Doc. 41).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should

use the following case number: **CR-18-01356-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 18th day of December, 2018.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge